UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

STEPHEN J. MILLER,　　　　　　　　　　　　　　　　　Civil No. 08-5327 (MJD/AJB)

　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

MS. ANDERSON, ET AL.,

　　　　　　　Defendants.

　　Stephen J. Miller, *Pro Se*.

　　Frank J. Magill, Jr., Esq., Acting United States Attorney, and Ana H. Voss, Esq., Assistant United States Attorney, for Defendants-Joyce Anderson, Ricardo Rios, Michael K. Nalley, and Harley G. Lappin.[1]

　　This matter is before the Magistrate Judge for Report and Recommendation ("R&R") on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and Rule 12(b)(6), failure to state a claim upon which relief can be granted, or in the alternative, for Summary Judgment pursuant to Rule 56 [Docket No. 18]. Plaintiff is serving a 135 month term of imprisonment for committing a federal crime that involved interstate distribution of child pornography. See Bitz Decl., ¶ 1 [Docket No. 20]. The term of imprisonment was imposed on November 20, 2007. Id. Plaintiff's current projected release date for completion of his term of imprisonment is February 26, 2017. Id. Plaintiff was confined at FCI Waseca from April 9, 2008, to October 8, 2008. Id. at ¶ 3. Currently, he is confined at FCI

---

[1] Plaintiff mistakenly identified Mr. Lappin as "Harvey" in his Complaint [Docket No. 1].

1

Englewood, Colorado, and prior to his confinemt at FCI Waseca, Plaintiff was confined in the San Bernadino County Jail in California. Id.

Plaintiff's Complaint identifies as defendants: Joyce Anderson, Health Services Administrator at FCI Waseca; Ricardo Rios, Warden, FCI Waseca; Michael K. Nalley, Regional Director for the North Central Regional Office, Federal Bureau of Prisons ("BOP"); and Harley G. Lappin, Director, BOP. Plaintiff filed a *pro se* complaint on October 1, 2008, under 42 U.S.C. § 1983. However, Section 1983 is not applicable to suits against federal employees and this action is therefore construed as an action under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).[2] The Complaint asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and "deliberate indifference" to the treatment of his serious medical needs. See Compl. ¶ 12-13. More specifically, Plaintiff alleges Defendants refused to prescribe him Baclofen[3] and Sulindac[4] for his back pain. Id. Plaintiff seeks a jury trial to determine total monetary damages, including but not limited to: out-

---

[2] "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980).
  The Eighth Circuit has stated that "[t]his court has referred to a Bivens action as 'the federal law analogous to § 1983.'" Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir. 1995)(citations omitted). "[A]n action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." Id. (citation omitted). "'The effect of Bivens was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous, to the § 1983 action against state officials.'" Bellecourt v. United States, 784 F. Supp. 623, 629 (D. Minn. 1992)(citations omitted).

[3] Baclofen is a muscle relaxer sometimes used to treat back spasms, pain, and stiffness. http://www.drugs.com/baclofen.html (last visited Aug. 7, 2009).

[4] Sulindac is a nonsteroidal anti-inflammatory drug used to relieve inflammation, swelling, stiffness, and joint pain. See THE PDR FAMILY GUIDE TO PRESCRIPTION DRUGS 136 (8th ed. 2000)(hereinafter "PDR Fam").

2

of-pocket damages; expenses; physical damages; impairment; punitive damages; mental pain, distress, and anguish in the past and future; reimbursement of the cost and time expended by Plaintiff for actions unlawfully provoked by Defendants; prejudgment and post-judgment interest; and a "contengency enhancement premium of one third to one-half of the award because of the high risk of litigation of Civil Rights cases", which includes "the costs and time expended by Plaintiff and his legal assistants." Id. at 13.[5]

Defendants now move for dismissal of the claims against them because, *inter alia,* Defendants alleged involvement in the administrative review process does not amount to personal involvement in the decisions relating to Plaintiff's medical treatment to hold them liable.

The matter has been referred to the undersigned for R&R under 28 U.S.C. § 636 and Local Rule 72.1(b). For reasons discussed below the undersigned **recommends** that Plaintiff's Complaint be dismissed.

## BACKGROUND

**Plaintiff's Medical Treatment**

On June 6, 2006, Plaintiff underwent surgery on his spine at the United Medical Center in Cheyenne, Wyoming. See Voss Decl. ¶ 4, Attach. A [Docket No. 24]; see also Pl.'s Resp. ¶ 1 [Docket No. 39]. The surgery was medically termed as a decompressive laminectomy (L4 to sacrum) with foraminotomies over L4, L5, and S1 nerve roots, a transforaminal lumbar

---

[5] The Court would briefly note that Defendants do not contest that Plaintiff exhausted his administrative remedies as required by the BOP per Program Statement 1330.13 (codified 28 C.F.R. §§ 542.10-16) before bringing this federal action with respect to the denial of regular access to a muscle relaxant medication as a form of treatment for muscle spasms and chronic back pain. See Defs.' Mem. 9 [Docket No. 25].

3

interbody fusion at L4-L5 and L5-S1, with capstone cages, a posterolateral intertravrese fusion (L4 to S1), and a posterior segmental fixation (L4 to S1) with legacy instrumentation. See Voss Decl., Attach. A. The record notes that two to three days after the procedure, Plaintiff was walking well with no back pain, no weakness, or radicular symptoms. Id. After the surgery, Plaintiff underwent extensive physical therapy with Neurologist Dr. Steven Beers, including pool therapy, to help strengthen his lower lumbar area. See Pl.'s Resp. ¶ 1. Plaintiff indicates that his pain continued after the back fusion, and he complained about "burning sensations" in his lower back. Id. At this time, Plaintiff was also seeing Dr. Malm at the University of Wyoming Family Clinic in Cheyenne, Wyoming. Id. Dr. Malm regulated the medications for Plaintiff's back pain. Id. Under Dr. Malm's care, Plaintiff was taking 800mg of Skelaxin,[6] 500 mg of Naproxin,[7] and 200/50 mg of Hydrocodone[8] to reduce his pain. Id.

Prior to his confinement at FCI Waseca, Plaintiff was confined in the San Bernardino County Jail. Medical records provided note that Plaintiff received 10mg of Baclofen, 50mg (twice per day) of Tramadol HCL,[9] and 200mg of Sullindac. See Voss Decl. ¶ 5, Attach. B; see also Pl.'s Resp. ¶ 2. He also received an MRI while incarcerated due to the increased pain and

---

[6] Skelaxin is also a muscle relaxant used together with rest and physical therapy to treat discomfort associated with acute skeletal muscle conditions such as pain and injury. http://www.drugs.com/skelaxin.html (last visited Aug. 7, 2009).

[7] Naproxen is a nonsteroidal anti-inflammatory drug also used to relieve inflammation, swelling, stiffness, and joint pain associated with arthritis, tendinitis, and bursitis. See PDR Fam at 435. It is also used to relieve other types of mild to moderate pain. Id.

[8] Hydrocodone, or otherwise known as Ibuprofen, is used for short-term treatment of pain. http://www.drugs.com/cdi/hydrocodone-ibuprofen.html (last visited Aug. 7, 2009).

[9] Tramadol HCL is prescribed to relieve moderate to moderately severe pain. See PDR Fam at 707.

discomfort in his lower lumbar area. See Anderson Decl. ¶ 5 [Docket No. 22]; see also Pl.'s Resp. ¶ 2. Said MRI confirmed that Plaintiff had anatomic alignment to his lumbar spine and no evidence of acute disc herniation. See Andersen Decl. ¶ 5. The MRI did, however, establish that he had moderate bilateral neutral foraminal stenosis at L3-4 secondary to circumferential disc bulging with bilateral facet hypertrohpy and minimal narrowing of the thecal sac at L3-4. Id.

On April 9, 2008, Plaintiff was transferred to FCI Waseca. Upon arrival, Plaintiff's physical condition was assessed by Nurse Kirk Alford for an intake screening. See Voss Decl. ¶ 6, Attach. C; see also Pl.'s Resp. ¶ 4. Nurse Alford noted that Plaintiff was taking Amitriptyline,[10] Tramadol, Sulindac, and Baclofen at the time of his screening. Id. Plaintiff states that Nurse Alford took said medication away immediately. Id.

On April 12, 2008, Plaintiff's condition was assessed a second time by Physician's Assistant Karen Peterson. See Voss Decl. ¶ 7, Attach. D; see also Pl.'s Resp. ¶ 5. Ms. Peterson noted that Plaintiff at the time suffered from refractive error, chronic back pain, asthma, allergic rhinitis, and depression. See Voss Decl., Attach. D. Upon examination, Mr. Peterson indicated that Plaintiff had no spinal deformity or tenderness, and full range of motion. Id. at p.8. Plaintiff was taking 500mg of the anti-inflammatory Naproxen for his back pain. Id. at p.11. After the examination, Ms. Peterson recommended that Plaintiff indefinitely receive an extra pillow and a lower bunk bed to help him sleep. See Voss Decl. ¶ 8, Attach. E; see also Pl.'s Resp. ¶ 5. She also approved work restrictions limiting the amount of standing, ladder work, and lifting he could perform. See Voss Decl. ¶ 9, Attach. F; see also Pl.'s Mem. ¶ 5.

---

[10] Amitriptyline is prescribed for relief of symptoms of mental depression. See PDR Fam at 240.

On April 16, 2008, Plaintiff complained that he was not provided a muscle relaxant medication on a regular basis while confined at FCI Waseca. See Anderson Decl. ¶ 7; see also Pl.'s Resp. ¶ 6. For this reason, Plaintiff submitted an inmate request to Defendant Anderson. Id. In his request Plaintiff complained that the BOP physician's assistant would not provide Baclofen because it was "non-formulary"[11] See Pl.'s Resp., Ex. G.[12] Plaintiff stated that the Naproxen was working fine for his pain but needed to take it three times per day versus two. Id.

The next day, Defendant Anderson informed Plaintiff that the physician's assistant was correct-Baclofen was "not approved for use unless specifically authorized on a case by case basis through Central Office. In order for such approvals to occur, standard protocols must first be implemented and proven effective." Id. Plaintiff was then asked to continue working with the FCI Waseca staff to come up with a treatment plan. Id.

On May 21, 2008, Plaintiff was evaluated by Physician's Assistant Linda Brandt after he complained of increasing back pain and decreased sensation in several toes in his right foot. See

---

[11] BOP has established a national formulary, which is a list of medications that BOP employees are expected to use to provide high-quality, cost-effective drug therapy for inmates. See Anderson Decl. ¶ 3. The applicable formulary utilized during Plaintiff's incarceration at FCI Waseca included the formulary on June 12, 2007, and the formulary approved on June 2, 2008. See Defs.' Mem. 6. Both formularies restricted the use of muscle relaxants (such as Baclofen) for treatment of muscle spasms related to multiple sclerosis, spinal cord injury or intrinsic cord lesions (not herniated spinal discs or *low back pain due to muscle spasm*), stroke, and cerebral palsy. See Anderson Decl. ¶ 4, Attach. A (emphasis added). The formularies indicate that long-term use of muscle relaxant medications is discouraged because there are generally no valid indications for using them on a long-term basis. Id. at p. 29. The formularies also notes that the class of medications which includes Baclofen "are frequently diverted to other inmates due to their mood-altering effects" and "abrupt discontinuation [sic] can precipitate a drug withdrawal syndrome." Id.

[12] Plaintiff requested that he be given the 800mg of Skelaxin that Dr. Malm prescribed before he went to prison, but the physician's assistant said that such a drug was unavailable in federal prison. Id.

Anderson Decl. ¶ 8; Voss Decl. ¶ 10, Attach. G; see also Pl.'s Resp. ¶ 7. In response to his complaints, Plaintiff was provided with a cane and heel cushions to use indefinitely. See Voss Decl. ¶ 11, Attach. H. He also received a prescription for Indomethacin[13] (50mg three times per day) and the Naxopren prescription was stopped. See Anderson Decl. ¶ 8.

On June 13, 2008, objective evidence of Plaintiff's spinal alignment was obtained. See Anderson Decl. ¶ 9; see also Pl.'s Resp. ¶ 8. The evidence established that the alignment of Plaintiff's spine was normal and that only mild degenerative changes were evident in the upper lumbar spine with mild anterolateral end plate spurring. See Anderson Decl., Attach. C.

On July 30, 2008, Plaintiff advised Nurse Tracie Peterson that he was experiencing severe back pain and right hip pain. See Anderson Decl. ¶ 8; see also Pl.'s Resp. ¶ 8. Plaintiff was advised to apply ice to his back and take Tylenol for relief of the pain. Id.; see also Voss Decl. ¶ 12, Ex. I. Plaintiff states that when ice was applied to the back there was no effect except for tightening of the muscles in the lower lumbar area. See Pl.'s Resp. ¶ 8. The Tylenol (4-8 tablets in a 24 hour period) also had "little to no effect" on Plaintiff's subjective complaints of pain. Id.

On September 29, 2008, Plaintiff requested a different pain medication from Nurse Peterson because the prescribed Indomethacin also had "little to no effect" on relieving his back and hip pain. See Anderson Decl. ¶ 8; Voss Decl. ¶ 13, Ex. J; see also Pl.'s Resp. ¶ 8. Plaintiff was then placed back on Naproxen (500mg two times per day). Id. Plaintiff indicates that the

---

[13] Indomethacin is a nonsteroidal anti-inflammatory drug used to relieve pain associated with arthritis, including ankylosing spondylitis (arthritis of the spine). See PDR Fam at 327.

7

Naproxen did not help to relieve his pain. See Pl.'s Resp. ¶ 8.[14]

## DISCUSSION

**Standard of Review**

Defendants argue in part that Plaintiff's Complaint does not state a claim for relief and should be dismissed under Fed. R. Civ. P. 12(b)(6). A complaint challenged by a motion to dismiss pursuant to Rule 12(b)(6) need not contain detailed factual allegations to survive, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to avoid dismissal. Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). Factual allegations must be sufficient "to raise a right to relief above the speculative level...on the assumption that all allegations in the complaint are true." Id. (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)("[T]he pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). All reasonable inferences must also be drawn in the non-movant's favor. Hafley v. Lohman, 90 F.3d 264, 267 (8th Cir. 1996). Moreover, a complaint is not adequate if the pleading "left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 1968. A complaint must contain sufficient facts to state a claim that is not only conceivable, but plausible. Id. at 1974. A complaint should not be dismissed simply because a court doubts that a plaintiff will be able to prove all factual allegations in the complaint. Id. at 1964-65.

---

[14] Plaintiff was soon thereafter transferred to FCI Englewood, Colorado, in October 2008. Defendants note and the Court agrees that Plaintiff's facts and allegations regarding the treatment he received at FCI Englewood should be disregarded as Plaintiff has not sued anyone at FCI Englewood and cannot do so in this jurisdiction. See Defs.' Reply 6, n.1 [Docket No. 47].

8

Accordingly, a well-pled complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. at 1965.

Furthermore, the Court may grant a motion to dismiss on the basis of a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 326 (1989). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'...a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Id. at 327.

Legal Analysis

Plaintiff sues each Defendant in his/her individual capacity for deliberate indifference to his medical needs under the Eighth Amendment. See Compl. Defendants, however, argue that Plaintiff has failed to plead facts to show that any of the Defendants were personally involved in the alleged unconstitutional conduct. See Defs.' Mem. 14. In response, Plaintiff contends that he can establish liability based on Defendants' positions as "supervisors." See Pl.'s Resp. 10.

Nevertheless, as a matter of law Plaintiff cannot rely on Defendants' positions as supervisors to establish liability. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1948 (2009)(citing Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812)(a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the

9

nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties")). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, had violated the Constitution." Id. (emphasis added).

As an alternative ground for holding Defendants liable, Plaintiff argues that Defendants were directly involved in the alleged constitutional violations because they responded to Plaintiff's administrative grievances. See Pl.'s Resp. 10.[15] The Eighth Circuit, however, has held that prison officials cannot be held liable for merely denying grievance forms. See Rowe v. Norris, 198 Fed.Appx. 579, 580 (8th Cir. 2006)(citing Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). Moreover, the Court finds that Defendants should not be held liable because upon review of the Complaint there is no evidence that shows Defendants were directly involved in Plaintiff's medical treatment decisions. See id. at 580-81 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)("Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by prison doctors who fail to respond to prisoner's serious medical needs.")). Plaintiff does not dispute that Defendants were not directly involved with his medical care, but rather argues that their involvement is tied to the delays and denials of his administrative requests. As stated above, however, such grounds are insufficient for Eighth Amendment liability.

---

[15] Warden Rios responded to Plaintiff's BP-9; HSA Anderson responded to Plaintiff's cop-out and BP-8; Michael Nalley responded to Plaintiff's BP-10; and Harley Lappin responded to Plaintiff's BP-11. Id.

Even assuming *arguendo* that Defendants were directly involved in Plaintiff's treatment and that Plaintiff sufficiently pled that each of the Defendants, through their own individual actions, had violated his Eighth Amendment right, the Court would find upon review of the Complaint that Plaintiff's merely disagreed with the treatment he received. Mere disagreement with the course of medical treatment is insufficient to state an Eighth Amendment claim. Rowe, 198 Fed.Appx. at 581 (citing Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)). Plaintiff was given Naproxen, Indomethacin, Tylenol, and ice for his back pain, as well as an extra pillow, a lower bunk to help him sleep, a walking cane, and several work restrictions. Plaintiff filed his administrative requests and this action because he sought to have Defendants prescribe him Baclofen and Sullindac as was prescribed while he was incarcerated at San Bernardino County Jail, notwithstanding that BOP drug formularies did not allow such prescriptions for Plaintiff's condition. Such a dispute does not rise to the level of an Eighth Amendment violation.

## RECOMMENDATION

Accordingly, the Court **HEREBY RECOMMENDS** that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and Rule 12(b)(6), failure to state a claim upon which relief can be granted, or in the alternative, for Summary Judgment pursuant to Rule 56 [Docket No. 18] be **GRANTED** and that the Complaint [Docket No. 1] in this matter be **DISMISSED WITH PREJUDICE**.


Dated:   August 7, 2009

                                             s/ Arthur J. Boylan
                                             Arthur J. Boylan

United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **August 21, 2009**.